[No. H035626. Sixth Dist. Aug. 30, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
SIMON LAWRENCE TORRES, Defendant and Appellant.

COUNSEL

Karli Sager, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, René A. Chacón and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LUCERO, J.*—

## 1. INTRODUCTION

In this case a jury found that defendant Simon Lawrence Torres was guilty of attempting to dissuade a victim or witness from reporting to law enforcement four other alleged crimes that the jurors were not persuaded had occurred. A judge who did not preside at the trial imposed a sentence for a greater offense than was submitted to the jury, which included both a three-year enhancement that the prosecutor had once asked to dismiss and an inapplicable custody credit restriction. The Attorney General acknowledges that defendant deserves relief from this agglomeration of errors.

After trial, a jury convicted defendant of "a violation of Penal Code Section 136.1, Dissuading a Witness from testifying, as charged in Count II."[1] They were unable to reach a verdict on four other charges, namely robbery (§ 211; count 1), burglary (§ 459; count 3), possession by a felon of a silver revolver (§ 12021, subd. (a)(1); count 4), and possession by a felon of a shotgun (count 5). These charges were ultimately dismissed on a motion of the prosecutor.

---

*Judge of the Santa Clara Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Unspecified section references are to the Penal Code. Unspecified subdivision references are to section 136.1.

In bifurcated proceedings, the trial court found that defendant had three prior felony convictions, two leading to a prior prison term (§ 667.5, subd. (b)) and one burglary conviction that qualified as a prior strike (§ 667, subds. (b)–(i)) and a violent felony (§ 667.5, subd. (a)). At sentencing, the trial court sentenced defendant to 12 years in prison, consisting of the upper term of four years for violating section 136.1, subdivision (c)(1), doubled due to defendant's prior strike and a total of four years of enhancements for prior prison terms, one year under section 667.5, subdivision (b) and three years under section 667.5, subdivision (a). The court awarded 340 days of credits, including 296 days of actual credits and 44 days of conduct credits as restricted by section 2933.1.

■ Reversal is necessary, as defendant correctly points out that he has been convicted and punished for violating section 136.1, subdivision (c)(1), without any finding by the jury or the trial court that the witness dissuasion was accompanied by force or a threat of force or violence. He has also been subjected to a three-year enhancement and a conduct credit limitation when there is no evidence that the witness dissuasion qualifies as a violent felony.

## 2. TRIAL EVIDENCE

David Campos was the alleged victim and the only eyewitness to all the charged offenses. Defendant did not testify at trial. We will summarize the testimony of Campos, while recognizing that the jury did not accept most of it.

According to Campos, he had met defendant through his cousin and they had socialized 20 to 25 times. The afternoon of May 6, 2009, Campos was home with his two young children when a silver Chevrolet Impala drove by his residence and returned to it. There was a knock on the front door. Campos opened the door to defendant. Campos turned to enter the living room. Defendant said he was sorry he had to "do this." Campos turned to see that defendant had a pistol in his hand at his side.

Defendant said, "I need the shotgun; I have to do something." There was a shotgun mounted on the wall of the bedroom occupied by Campos's brother-in-law. They both walked into the bedroom. Defendant said he wanted to borrow the shotgun. Campos told him no because it was not his to give. Defendant took it anyway.

Defendant also asked Campos separately for his cell phone and its battery, saying he would return each item later. Campos refused twice.

Defendant asked him to lie down in the bathroom or the bedroom. Campos refused because his young children were unattended. Defendant got irritated and took out the pistol, which he had put in his pocket, and raised it in Campos's direction.

Defendant let someone else into the house. Campos never got a good look at the other person because defendant blocked his view. Before defendant left, he told Campos that if he called the police, something bad would happen to him. When they left, Campos noticed his 42-inch flat screen television was missing. He did not see who had carried it away. Campos called the police that evening.

Campos, his girlfriend, Amanda Webb, and her brother, Patrick, each received telephone calls from defendant offering to return the television if the charges were dropped. On the morning of his testimony, Campos received two phone messages from the county jail where defendant was housed. One told him to turn off his phone so he would lose track of time. The other said that if he did not drop the charges, something bad would happen to his family.

### 3. JURY ARGUMENT

On the witness dissuasion charge, the prosecutor argued to the jury that the attempted dissuasion occurred before defendant left Campos's residence, when defendant said, "you better not say anything or it's going to get worse, something bad is going [to] happen." "The defendant started getting a little more agitated, even a little more force and fear, [waved] that gun around to dissuade, prevent, discourage any report being made." The prosecutor further argued that the evidence of later threats and attempts to discourage testimony showed that defendant knew he was guilty of the crimes.[2] As we will explain in the next part (pt. 4.C.), there was no argument that the witness dissuasion was accompanied by force or a threat of force, because that issue was bifurcated.

### 4. PLEADING AND PROOF OF WITNESS DISSUASION

On appeal defendant contends that he has been sentenced for a crime that was neither pleaded nor proved to the jury. To better understand these contentions, we will review the proceedings applicable to the charge of witness dissuasion after examining the underlying statutory framework.

---

[2] The jury was instructed that if defendant tried to discourage someone from testifying, it may show that he was aware of his guilt. (CALCRIM No. 371.)

## A. *The applicable statutes*

As we understand it, section 136.1 defines a family of 20 related offenses.[3] There are five underlying offenses that are wobblers alternately punishable as misdemeanors or felonies.

---

[3] Section 136.1 provides: "(a) Except as provided in subdivision (c), any person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

"(1) Knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

"(2) Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

"(3) For purposes of this section, evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice.

"(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

"(1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.

"(2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof.

"(3) Arresting or causing or seeking the arrest of any person in connection with that victimization.

"(c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances:

"(1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person.

"(2) Where the act is in furtherance of a conspiracy.

"(3) Where the act is committed by any person who has been convicted of any violation of this section, any predecessor law hereto or any federal statute or statute of any other state which, if the act prosecuted was committed in this state, would be a violation of this section.

"(4) Where the act is committed by any person for pecuniary gain or for any other consideration acting upon the request of any other person. All parties to such a transaction are guilty of a felony.

"(d) Every person attempting the commission of any act described in subdivisions (a), (b), and (c) is guilty of the offense attempted without regard to success or failure of the attempt. The fact that no person was injured physically, or in fact intimidated, shall be no defense against any prosecution under this section.

"(e) Nothing in this section precludes the imposition of an enhancement for great bodily injury where the injury inflicted is significant or substantial.

"(f) The use of force during the commission of any offense described in subdivision (c) shall be considered a circumstance in aggravation of the crime in imposing a term of imprisonment under subdivision (b) of Section 1170."

 Subdivision (a)(1) proscribes knowingly and maliciously preventing or dissuading any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law, and subdivision (a)(2) proscribes attempting to do so.[4]

Subdivision (b) proscribes three other wobblers with the common element of attempting to prevent or dissuade a crime victim or witness from doing any of the following: reporting the victimization to anyone in law enforcement, including a law enforcement officer, a peace officer, probation, parole, or correctional officer, a prosecuting agency, or a judge (subd. (b)(1)); causing a complaint, indictment, information, probation or parole violation to be prosecuted and assisting in the prosecution (subd. (b)(2)); or seeking or causing the arrest or arresting a person in connection with "that victimization" (subd. (b)(3)). Unlike the subdivision (a) offenses, the subdivision (b) offenses do not expressly include the mental element of knowingly and maliciously. The sentence range for these wobblers as felonies is not otherwise specified, so it is 16 months, two or three years. (§ 18.)

Under any one of four sets of circumstances specified in section 136.1, subdivision (c), each of the wobblers becomes a straight felony when it is committed knowingly and maliciously. These greater offenses are subject to a higher range of punishment, namely two, three, or four years in prison. (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1321 [66 Cal.Rptr.3d 481] [§ 136.1, subd. (b)(1) is a lesser offense of § 136.1, subd. (c)(3)]; *People v. Brenner* (1992) 5 Cal.App.4th 335, 341 [7 Cal.Rptr.2d 260] [§ 136.1, subd. (b)(1) is a lesser offense of § 136.1, subd. (c)(1)].) One specified circumstance is when the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person. (Subd. (c)(1).) The other three circumstances (described *ante*, fn. 3) are not relevant to this appeal. Since there are five underlying crimes which become greater offenses when they involve any of four sets of circumstances, section 136.1 describes a total of 20 related offenses.

## B. *The complaints*

Defendant asserts that he was deprived of due process in that "the prosecution did not allege the factual circumstances necessary for a violation of" subdivision (c)(1), namely the existence of force or a threat of force or violence. As will appear, defendant correctly observes that he was never expressly alleged to have employed force or a threat of force in dissuading a witness or victim.

---

[4] Attempting to commit a crime is itself a crime with a lesser punishment than the crime attempted unless the law specifies otherwise. (§ 664.)

The allegations against defendant were stated in an original complaint filed July 6, 2009, a first amended complaint filed on October 2, 2009, and a second amended complaint filed on January 11, 2010. On October 7, 2009, the first amended complaint was deemed an information and defendant waived his right to a preliminary examination, conceding that there was probable cause to believe he committed the offenses alleged in the complaint. Each of the complaints alleged all five crimes described in the introduction above, namely robbery (count 1), witness dissuasion (count 2), burglary (count 3), and possession by a felon of a silver revolver (count 4) and a shotgun (count 5).

Each count 2 in the original and amended complaints alleged that "[o]n or about May 7, 2009, the crime of DISSUADING A WITNESS FROM TESTIFYING, in violation of Section 136.1(c)(1) of the Penal Code, a FELONY, was committed by SIMON LAWRENCE TORRES, who did knowingly and maliciously prevent and dissuade David C., a witness and victim, from attending and giving testimony at a trial, proceeding, and inquiry authorized by law."

The amendments did not change the quoted text, just the enhancement allegations. The original complaint included an allegation that defendant had served a prior prison term following three felony convictions, one in San Benito County in May 2001 for throwing a substance at a vehicle (Veh. Code, § 23110, subd. (b)), a second in San Benito County in January 2002 for assault with a firearm (§ 245, subd. (a)(2)), and a third in Kings County in December 2002 for burglary (§ 459). (§ 667.5, subd. (b).) The original complaint also alleged that the burglary conviction qualified as a strike. (§ 667, subds. (b)–(i).)

The first amended complaint added a violent felony enhancement allegation under section 667.5, subdivision (a), that count 2 was a violent felony and that defendant had served a separate term following his conviction of the violent felony of burglary. The burglary was removed from the section 667.5, subdivision (b) allegation. The subject of the second amendment, an enhancement of the robbery count, is irrelevant to the issues on appeal.

Thus, the quoted language of count 2 alleged facts amounting to a violation of section 136.1, subdivision (a)(1), although it referenced a violation of subdivision (c)(1), which makes the underlying crime a greater offense when the act is accompanied by force or by an express or implied threat of force or violence. There was no express allegation of such force or threat, however, apart from the reference to subdivision (c)(1).

"Both the Sixth Amendment of the federal Constitution and the due process guarantees of the state and federal Constitutions require that a

criminal defendant receive notice of the charges adequate to give a meaning-ful opportunity to defend against them. (U.S. Const., 6th Amend. ['the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation']; *id.*, 14th Amend.; Cal. Const., art. I, § 15.) 'Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure.' [Citation.] 'The "preeminent" due process principle is that one accused of a crime must be "informed of the nature and cause of the accusation." [Citation.] Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' (*People v. Jones* (1990) 51 Cal.3d 294, 317 [270 Cal.Rptr. 611, 792 P.2d 643].)" (*People v. Seaton* (2001) 26 Cal.4th 598, 640–641 [110 Cal.Rptr.2d 441, 28 P.3d 175].)

As the Attorney General points out, an objection to lack of notice of the charges must be raised in the trial court and cannot be raised for the first time on appeal. (*People v. Seaton, supra,* 26 Cal.4th at p. 641; *People v. Cole* (2004) 33 Cal.4th 1158, 1205 [17 Cal.Rptr.3d 532, 95 P.3d 811].) As we will explain more fully below, defendant never expressed surprise or objected in the trial court when evidence was presented that his threats to the victim were accompanied by force and an implied threat of force or violence. It is too late to assert this objection on appeal.

Defendant's failure to object in the trial court may be explained by count 2 alleging a violation of section 136.1, subdivision (c)(1). Although the facts amounting to a violation were not spelled out in the complaint, the reference to that subdivision was at least a strong suggestion of what the prosecution intended to prove. This statutory reference provided some notice of the charge.

The situation is like that in *People v. Equarte* (1986) 42 Cal.3d 456 [229 Cal.Rptr. 116, 722 P.2d 890], where the complaint alleged assault with a deadly weapon and alleged that defendant had a prior conviction within the meaning of section 667. However, "[t]he complaint did not explicitly allege either generally or by reference to any specific provision of section 1192.7, subdivision (c), that defendant's *current* offenses were 'serious felonies' within the meaning of sections 667 and 1192.7, subdivision (c), and it contained no allegation that defendant had 'personally used a dangerous or deadly weapon' in the current offenses." (*People v. Equarte, supra,* at p. 459.) The prior conviction issue was bifurcated for trial and the section 667 enhancement was later imposed by the court after a finding of personal use based on the evidence at trial. (*People v. Equarte, supra,* at p. 460.)

On appeal the defendant argued that the complaint "did not inform him of the basis on which the prosecution claimed that his *current* offense was a

serious felony for purposes of section 667." (*People v. Equarte, supra*, 42 Cal.3d at p. 466.) The court agreed "with defendant that, under these circumstances, he was entitled to more specific notice of the facts the prosecution intended to prove to justify the section 667 enhancement. [Citation.] [¶] Nonetheless, as we explained in our very recent decision in *People* v. *Thomas* [(1986)] 41 Cal.3d 837, 843 [226 Cal.Rptr. 107, 718 P.2d 94], defendant's remedy for obtaining more specific notice in this regard is provided by the special demurrer procedure authorized by section 1012, and, having failed to invoke that remedy, defendant may not urge the point on appeal. As *Thomas* observes, because '[t]he defect in the pleading . . . is one of uncertainty only, [it] is waived by defendant's failure to demur.' (*Ibid.*)" (*Id.* at pp. 466–467.)

In our case the allegations of count 2 referred to a violation of section 136.1, subdivision (c)(1). If defendant wanted clarification of that allegation, he could have demurred. (*People v. Upsher, supra*, 155 Cal.App.4th 1311, 1318 [contention that violation of § 136.1, subd. (c)(3) stated an enhancement and not a separate offense should have been raised by demurrer].) It is not the case that the complaint provided absolutely no notice that the prosecution intended to prove a violation of subdivision (c)(1).[5] In any event, as we proceed to explain, the jury was not instructed about count 2 either in the terms of subdivision (c)(1) or in the terms of the complaint/information.

C. *The jury instructions and verdicts and bifurcation of the proceedings*

At the outset of the trial on January 11, 2010, defendant asked to have "the issue of the enhancements and priors" bifurcated. Judge Hedegard agreed to bifurcate the alleged "enhancements and/or the increased sentences."

A conference on jury instructions was held on January 13, 2010. The prosecutor submitted a list of proposed instructions including CALCRIM

---

[5] The complaint's allegation of a violation of section 136.1, subdivision (c)(1) distinguishes this case from *People v. Mancebo* (2002) 27 Cal.4th 735 [117 Cal.Rptr.2d 550, 41 P.3d 556], on which defendant relies. In that case, the alternative and harsher sentencing scheme of the "One Strike" law (§ 667.61) applied if the prosecution pleaded and proved that a forcible sex crime was accompanied by two specified circumstances. The prosecutor alleged the circumstances of gun use and kidnapping as to one victim, and gun use and tying or binding as to the other victim. (*People v. Mancebo, supra*, at p. 740.) At sentencing, however, in order to impose 10-year gun use enhancements, the trial court relied on an unpleaded multiple victim circumstance instead of the gun use to justify applying section 667.61. (*People v. Mancebo, supra*, at pp. 738–739.) The Supreme Court concluded that this substitution of special circumstances not only violated the terms of section 667.61, but the defendant's "due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*People v. Mancebo, supra*, at p. 747; cf. *People v. Arias* (2010) 182 Cal.App.4th 1009, 1019 [105 Cal.Rptr.3d 887] ["neither the information nor any pleading gave defendant notice that he was potentially subject to the enhanced punishment provision for attempted murder under section 664, subdivision (a)."].)

Nos. 2622 through 2624 pertaining to witness intimidation.[6] At this conference, the prosecutor asked the court to instruct on defendant's trying to discourage Campos from reporting crimes against him to law enforcement and not on trying to discourage Campos from testifying at trial. There was no defense objection to this request. As indicated above (*ante*, pt. 3.), the prosecutor argued to the jury that defendant attempted to prevent Campos from reporting the crimes.

The court accordingly instructed the jury later the same day orally and in writing in terms of CALCRIM No. 2622 that defendant was charged "with intimidating a witness in violation of Penal Code section 136.1. To prove that the defendant is guilty of this crime, the People must prove 1, 2, and 3. One, the defendant tried to prevent or discourage David Campos from making a report that he was a victim of a crime to law enforcement; two, David Campos was a witness or a crime victim; and three, the defendant knew he was trying to prevent . . . David Campos from reporting the crime, and intended to do so. [¶] It is not a defense that the defendant was not successful in preventing or discouraging the victim or witness from reporting a crime or appearing to testify. It is not a defense that no one was actually physically injured or otherwise intimidated."[7]

Thus, without defense objection, the prosecutor sought and obtained instructions about the elements of section 136.1, subdivision (b)(1), despite the complaint/indictment being phrased in the language of subdivision (a)(1).

As defendant points out on appeal, the jury was not instructed to determine the existence of any of the subdivision (c) circumstances that would make the crime a straight felony. For example, the jury was not instructed in terms of CALCRIM No. 2623: "If you find the defendant guilty of intimidating a witness, you must then decide whether the People have proved the additional allegation that the defendant acted maliciously and used or threatened to use

---

[6] CALCRIM, being part of the "California jury instructions approved by the Judicial Council," is recognized as "the official instructions for use in the state of California." (Cal. Rules of Court, rule 2.1050(a).) There are no proposed written instructions in the record on appeal apart from what the trial court actually gave. (*Id.*, rule 8.320(b)(4).) However, we may take judicial notice of the Rules of Court (Evid. Code, § 452, subd. (e)) and the wording of the CALCRIM publication, as it is not reasonably subject to dispute (Evid. Code, § 452, subd. (h)).

[7] CALCRIM No. 2622 currently encapsulates the five different wobbler offenses defined in section 136.1, subdivisions (a) and (b). CALCRIM No. 2622 lists four alternatives, treating both subdivision (a) alternatives as variations of the same offense. Although subdivision (b) itself does not include the elements of "knowingly and maliciously" (*People v. McElroy* (2005) 126 Cal.App.4th 874, 881 [24 Cal.Rptr.3d 439]), the instruction nevertheless includes a knowledge element with the specific intent requirement in the third element of all these offenses (Judicial Council of Cal., Crim. Jury Instns. (2011) Bench Notes to CALCRIM No. 2622, p. 544) and the jury was so instructed in this case.

force. [¶] To prove this allegation, the People must prove that: [¶] 1. The defendant acted maliciously; [¶] 2. The defendant used force or threatened, either directly or indirectly, to use force or violence on the person or property of a witness or victim or any other person. [¶] A person acts maliciously when he or she unlawfully intends to annoy, harm, or injure someone else in any way or intends to interfere in any way with the orderly administration of justice. [¶] The People have the burden of proving each allegation beyond a reasonable doubt. [¶] If the People have not met this burden for an allegation, you must find that the allegation has not been proved."

The reason this instruction was not given to the jury is that Judge Hedegard believed that it was one of the issues bifurcated for subsequent trial. At the jury instruction conference, the prosecutor asked to add CALCRIM No. 2623—that defendant "used threatened force, acted maliciously and used force, which is a sentencing enhancement." Defendant did not object that the instruction presented an unpleaded crime. But Judge Hedegard replied, "I was going to bifurcate the sentencing enhancement." When the prosecutor asked if there would be additional evidence presented in that regard, the judge replied, "All the enhancements were bifurcated." "I deleted it intentionally because I granted the motion to bifurcate all enhancements and sentencing factors." Defense counsel said, "Right . . . [s]o you are withdrawing 2623." The court stated, "I will not print up 2623 for this hearing. It will be for a later hearing if there is a jury." The prosecutor asked again if there would be another opportunity to present or argue with respect to the additional enhancements. The judge explained: "No argument now. We'll have another hearing on the presentation of evidence to prove all the other—anything relating to enhancements and then there will be closing arguments and there will be jury instructions if it goes to the jury." "We're just bifurcating the hearing."

Defense counsel stated that defendant had decided if he was convicted, "then the issues of the enhancements and the priors should be decided by the court." The court noted that the jury would be available for those issues, unless defendant was willing to waive his right to the jury. Defendant answered yes when the court asked if he was willing to waive his right to a jury "on all issues of enhancements and sentencing enhancements and on crime enhancements and all the special allegations."

After the jury was instructed and retired to deliberate, on January 13, 2010, Judge Hedegard returned to the topic of jury waiver. Defendant affirmed that he was willing to "submit to the court only the issues of the enhancements and special findings that we've not yet sent to the jury." The court described those issues as follows. They included a personal use of a firearm enhancement on the robbery count, a prior strike that would double the base term on

all counts, and a three-year violent felony enhancement. At this point the prosecutor and the court discussed the applicability of this three-year enhancement, culminating in the prosecutor's announcement that it would be dismissed.[8] The court mentioned that there was another one-year prior prison term enhancement. This recital was concluded by the court's statement that it had put on the record "what the possible enhanced penalties might be based on the matters that are proposed to have a jury waiver." Defense counsel said, "Yes, Your Honor." Defendant had no questions and agreed to submit it for court trial. We note that the court did not advise defendant that if it found the circumstances described in section 136.1, subdivision (c)(1), then defendant would be subject to punishment for a higher range of felony than had been submitted to the jury.

The following day, January 14, 2010, the jury returned the above described verdicts. As quoted in the introduction above, the verdict form simply reported that defendant was guilty of violating section 136.1, without specifying any subdivision.

In the jury's absence, the prosecutor expressed an interest in a retrial. The court asked defendant, "On the issue of the enhancement that is related to count 2, do you wish to have them proceed today or would you rather wait and have them proceed with the other trial, if there is another trial?" Defense counsel asked to wait and see what happened. The court stated, "If the other charges are dismissed, then we will set a hearing for the trial of the enhancements related to count 2."

A second jury trial was eventually scheduled on the unresolved charges for April 12, 2010.

D. *The bifurcated trial*

At a hearing on April 8, 2010, defense counsel advised a different judge, Judge Sanders, that the jury trial was going to be vacated—"we're going to submit the priors to the Court, the issue of the priors," and then postpone the case for sentencing. The prosecutor and defense counsel each responded affirmatively when the court asked if the jury had already been waived as to the issue of the priors. Defense counsel stated a desire to submit the issue to the court.

---

[8] We will summarize this discussion in greater detail where relevant in part 5.B., *post*.

The prosecutor, the same one at trial, offered a section 969b prison packet in evidence.[9] He described the burglary prior as a strike prior "which also counts as the special allegation with the finding of a violent felony pursuant to [section] 667.5[, subdivision] (a) for an additional three years." The court reviewed the documents and found that defendant had a prior conviction of a first degree burglary that qualified as a strike and also constituted "a violent felony with a finding of true on the allegation pursuant to [section] 667.5[, subdivision] (a)." The court also found that defendant had served a prison term for violations of sections 32 and 245, subdivision (a)(2), and Vehicle Code section 23110, subdivision (b).

The prosecutor moved to dismiss the remaining counts. Judge Sanders took the matter under submission to address at sentencing. According to the clerk's minutes (what San Benito County titles a "PROCEEDINGS DISPOSITION NOTICE"), the remaining counts were dismissed at the April 8, 2010 hearing.

No one pointed out to Judge Sanders that Judge Hedegard had bifurcated for trial the existence of the circumstances described in section 136.1, subdivision (c)(1). There was no express finding of those circumstances after the bifurcated trial.

### E. *Sentencing*

The probation report recited that defendant had been convicted by the jury of violating section 136.1, subdivision (c)(1) and recommended a prison sentence of 12 years. Defendant did not object to this description of his conviction. At sentencing, Judge Sanders imposed the 12-year prison sentence described above for "a violation of Penal Code Section 136.1[, subdivision] (c)(1)," including the upper term of four years "based upon the crime's nature of great violence, great bodily harm or threat of bodily harm." Defendant did not object. The four-year term was doubled due to defendant's prior strike. "There is a violation of [section] 667.5. An enhancement adds an additional

---

[9] The prison packet included two abstracts of judgment. The one from San Benito County reflects that defendant was convicted on May 1, 2001, by plea of throwing a substance at a vehicle. (Veh. Code, § 23110, subd. (b).) He was also convicted by plea on December 19, 2001, of being an accessory after the fact to an armed assault. (§§ 32, 245, subd. (a)(2).) On February 25, 2004, he was sentenced to prison on these offenses for three years eight months following revocation of probation. The abstract from Kings County reflects that defendant was convicted by plea on November 12, 2002, of first degree burglary (§ 459), for which he was sentenced to six years in prison on June 9, 2004, concurrent with the sentence on the San Benito County cases. The record contains no information, probation report, or transcript of a change of plea hearing from any prior case.

According to the probation report in this case, defendant was originally placed on probation in San Benito County for his 2001 offenses and in Kings County for the burglary. It was only after the new offenses that probation was revoked in both cases.

three years, and the enhancement pursuant to [section] 667.5[, subdivision] (b) an additional one year." The remaining counts were not expressly dismissed at sentencing.

F. *There was no finding of a violation of section 136.1, subdivision (c)(1)*

On appeal defendant argues, "Given the enhanced penalty in [section] 136.1, subdivision (c)(1) and the additional factfinding required for it to apply, the federal constitution requires the factual allegations supporting the increased penalty be charged, submitted to a jury, and proven beyond a reasonable doubt," none of which occurred here.

■ In *People v. Towne* (2008) 44 Cal.4th 63 [78 Cal.Rptr.3d 530, 186 P.3d 10], the Supreme Court explained at page 74: "In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), the United States Supreme Court held that 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' Subsequently, in *Blakely v. Washington*, the high court clarified that the 'prescribed statutory maximum' for purposes of the right to a jury trial is not necessarily the maximum penalty provided by statute for the crime; rather, it is 'the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*' (*Blakely v. Washington* (2004) 542 U.S. 296, 303 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*).) As thereafter explained in *Cunningham* [*v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856]], 'under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' (*Cunningham, supra*, 549 U.S. at p. 281.)"[10]

In *Apprendi*, "[t]he high court defined a sentencing factor, in contrast to a sentence enhancement, as 'a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range authorized by the jury's finding* that the defendant is guilty of a particular offense.' (*Apprendi, supra*, 530 U.S. at p. 494, fn. 19.)" (*People v. Seel* (2004) 34 Cal.4th 535, 546, fn. 4 [21 Cal.Rptr.3d 179, 100 P.3d 870], some italics added.)

■ In this case, as we have explained, the instructions asked the jury to determine if defendant had violated subdivision (b)(1) of section 136.1. That crime is a wobbler, subject to a maximum punishment of three years in

---

[10] The facts of a prior conviction are an exception to the requirement of a jury trial. (*People v. Towne, supra*, 44 Cal.4th at p. 79.)

prison. The jury was not asked to find a violation of subdivision (c)(1). In *Apprendi*'s terms, subdivision (c)(1) does not describe a "sentencing factor" of a subdivision (b)(1) violation, as a finding of the subdivision (c)(1) circumstances invokes a higher range of punishment than authorized for a subdivision (b)(1) conviction, with a maximum sentence of four years.[11] Neither does subdivision (c)(1) describe an enhancement. An enhancement is "an additional term of imprisonment added to the base term." (Cal. Rules of Court, rule 4.405(3); cf. *People v. Dennis* (1998) 17 Cal.4th 468, 500 [71 Cal.Rptr.2d 680, 950 P.2d 1035].) Subdivision (c)(1) must be recognized as describing a greater offense with its own alternative and separate sentencing scheme. (Cf. *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1835 [44 Cal.Rptr.2d 792] [§ 1170.15 creates an alternative sentencing scheme].) Just as the Supreme Court said about the alternative sentencing scheme of the One Strike statute, "[b]ecause the sentencing allegations have the potential to increase punishment, the defendant has a Sixth Amendment right to have their truth decided by a jury." (*People v. Anderson* (2009) 47 Cal.4th 92, 102–103 [97 Cal.Rptr.3d 77, 211 P.3d 584].)

Of course, the requirement of a jury finding of an element of an offense or a fact necessary to increase the punishment may be avoided if the defendant waives a jury trial and either stipulates to the fact or consents to judicial factfinding. (*People v. Munoz* (2007) 155 Cal.App.4th 160, 166 [65 Cal.Rptr.3d 815]; see *Blakely v. Washington, supra,* 542 U.S. at p. 310.) The Attorney General asserts that this is what happened here, that defendant waived his right to a jury trial on the force or threat element by agreeing to bifurcation of this issue.

Defendant provides alternative replies to the assertion of waiver. His reply brief states that "the jury waiver of all enhancements and allegations did not include a waiver of jury trial on the allegation of force because the allegation

---

[11] As noted above, Judge Hedegard variously characterized section 136.1, subdivision (c)(1) as describing a "sentencing enhancement," and among the "enhancements and sentencing factors" and "special findings." It is quite possible that the judge was misled by the title to CALCRIM No. 2623, "Intimidating a Witness: Sentencing Factors (Pen. Code, § 136.1(c))." The bench notes to this instruction repeat this sentencing factor characterization. (Judicial Council of Cal., Crim. Jury Instns., *supra,* at p. 548.) The Guide for Using Judicial Council of California Criminal Jury Instructions in volume 1 of CALCRIM does advise that the instruction titles "are directed to lawyers and sometimes use words and phrases not used in the instructions themselves. The title is not part of the instruction. The titles may be removed before presentation to the jury." (*Id.* at p. xxiv.)

In our view, CALCRIM No. 2623 would be improved by eliminating from its title the phrase "Sentencing Factors" and by eliminating this characterization of the instruction from its bench notes. A greater improvement would be for the instruction to identify the multiple offenses described in section 136.1, subdivision (c)(1) as separate offenses with some overlapping and some different elements than the lesser offenses described in subdivisions (a) and (b).

was never in the complaint." His supplemental opening brief, filed the same day as the reply brief, states that if we find him to have waived a jury trial on this allegation, "[t]here was no evidence, much less substantial evidence" presented at the bifurcated trial, "tending to show [defendant] used or threatened force."

We have already rejected defendant's argument that there was no allegation of force in the complaint. The Attorney General's supplemental brief acknowledges defendant's claim that no evidence of force was presented at the bifurcated trial, but otherwise takes no position about that claim.

As we see it, the fundamental problem in this case is not that the prosecution failed to present evidence of force at the bifurcated trial. Defendant might have agreed that the trial court could make findings at the bifurcated trial or even at sentencing about the section 136.1, subdivision (c)(1) elements based on the evidence presented to the jury. That is exactly what occurred in *People v. Equarte, supra*, 42 Cal.3d 456. The high court stated: "there is no merit to defendant's claim that the enhancement is invalid because the jury in this case never explicitly found that defendant had 'personally used' the weapon. With defendant's consent, the section 667 enhancement issue was bifurcated from the remainder of the case and set for determination by the court. On the basis of the evidence that had been presented at trial, the court could properly find that the prosecution had proved defendant's 'personal use' of the weapon; indeed, the record leaves no doubt on this factual point." (*Id.* at p. 467.)

In this case, it is fairly clear that defendant acquiesced to Judge Hedegard's plan to bifurcate the force or threat element for a separate trial. It is not at all clear that defendant agreed to waive a jury trial on this element. When Judge Hedegard advised defendant of the issues that would be resolved by the court if he waived a jury trial, he spelled out all the alleged enhancements, but did not mention the force or fear element. What is clear is that defendant did not waive any trial of this element, for example, by stipulating to it. It was bifurcated for determination at a later proceeding and it then disappeared from the case. After this issue was carved out of the jury trial, it was not resolved by later judicial factfinding. The issue seems to have been forgotten by the court and the parties at the bifurcated trial on the enhancements and at sentencing.

■ The four-year upper term sentence imposed on defendant, however, is only available for a violation of section 136.1, subdivision (c). It is elementary that a defendant should not be punished for a crime of which he was not convicted. (Cf. *People v. Palmer* (2001) 86 Cal.App.4th 440, 444 [103 Cal.Rptr.2d 301] ["It violates fundamental notions of due process to deem a defendant convicted of an offense on which the jury was never instructed."].)

A similar situation arose in *People v. Zackery* (2007) 147 Cal.App.4th 380 [54 Cal.Rptr.3d 198]. Though defense counsel indicated that the defendant would be pleading no contest to all three counts, in fact the defendant did so only as to two of the counts. Nevertheless, the court clerk recorded that the defendant had pleaded no contest to all counts and the court sentenced the defendant on all counts. (*Id.* at p. 385.) The parties on appeal agreed that the sentence on the third count was unauthorized. (*Id.* at p. 386.)

The parties in this case agree that the remedy for this error is to deem defendant to have been convicted of section 136.1, subdivision (b)(1), and to remand for resentencing on this wobbler.[12]

### 5. THE PRIOR BURGLARY CONVICTION SUPPORTS NO ENHANCEMENT UNDER SECTION 667.5

On appeal defendant correctly contends that the three-year violent felony enhancement pursuant to section 667.5, subdivision (a) is inapplicable and that the prior burglary conviction does not justify a one-year enhancement pursuant to section 667.5, subdivision (b). Again we review the statutory scheme to understand these contentions.

### A. *The applicable statutes*

Section 667.5, subdivision (b) provides for a one-year enhancement for a felony conviction for "each prior separate prison term served for any felony." Section 667.5, subdivision (a) provides in part, "Where one of the new offenses is one of the violent felonies specified in subdivision (c), in addition to and consecutive to any other prison terms therefor, the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior offense was one of the violent felonies specified in subdivision (c)."

Section 667.5, subdivision (g) states: "A prior separate prison term for the purposes of this section shall mean a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with

---

[12] *People v. Ortiz* (2002) 101 Cal.App.4th 410 [124 Cal.Rptr.2d 92] found it harmless beyond a reasonable doubt when the jury was not instructed about the force or threat element of witness dissuasion because there was "uncontradicted testimony" such that "no reasonable jury could have decided appellant uttered such statements and yet have viewed the statements, which foretold misfortune or even death if [the witness] talked to the police, as not threatening force." (*Id.* at p. 416.) In our case, however, the jury obviously doubted the victim's credibility, being unable to agree that defendant had a handgun. Under these circumstances, we cannot say beyond a reasonable doubt what the jury might have decided if presented with instructions under CALCRIM No. 2623.

concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after an escape from incarceration."

■ On the violent felony list in subdivision (c)(20) of section 667.5 is "Threats to victims or witnesses, as defined in Section 136.1, which would constitute a felony violation of Section 186.22 of the Penal Code." Section 186.22, subdivision (a) prohibits active participation in a criminal street gang. Section 186.22, subdivision (b) provides sentence enhancements for committing felonies "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."[13]

Also on the violent felony list in section 667.5, subdivision (c)(21) is "Any burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary."

Thus, a violent felony enhancement attaches to a new violent felony conviction if the defendant has served a prior prison term for a violent felony. In other words, it depends on both past and current convictions of violent felonies.

B. *The proceedings on the three-year enhancement*

As explained above, the three-year enhancement allegation under section 667.5, subdivision (a) was added by the first amended complaint. By the time of the jury instruction conference on January 13, 2010, however, in discussing this enhancement, the prosecutor stated that after further review, "it is our position that the burglary that is listed under that was not, in fact, specially proven to be with the person present so it doesn't apply. It would just be a one-year enhancement pursuant to section 667.5[, subdivision] (b) and not the three-year enhancement." The prosecutor clarified that "I'm saying that I don't believe the finding was made on the original past charge." The prosecutor asked to dismiss the section 667.5, subdivision (a) charge and allow it as a section 667.5, subdivision (b) charge. The prosecutor believed that it only applied once as a one-year enhancement.

However, by April 8, 2010, the time of the bifurcated trial on the priors, the prosecutor had apparently forgotten this insight and, as described above

---

[13] The phrase "a felony violation of section 186.22" in section 1192.7, subdivision (c)(28) has been interpreted as applying to violations of section 186.22, subdivisions (a) and (b). (*People v. Briceno* (2004) 34 Cal.4th 451, 464 [20 Cal.Rptr.3d 418, 99 P.3d 1007].)

(in pt. 4.D.), asked a new judge to find that the burglary qualified as a violent felony, which the judge did.

C. *Neither the prior burglary nor the current crime qualifies as a violent felony nor is a one-year enhancement appropriate*

On appeal, defendant points out, and the Attorney General properly concedes, that there is no evidence in the record establishing that the prior burglary conviction qualifies as a violent felony. Defendant also points out, and the Attorney General properly concedes, that there is no evidence in the record establishing that the witness dissuasion found by the jury qualified as a violent felony because the threats were made in a criminal street gang context. "[A] violation of Penal Code section 136.1 is a violent felony only when it is gang related." (*People v. Neely* (2004) 124 Cal.App.4th 1258, 1263 [22 Cal.Rptr.3d 274].)[14]

While the prosecutor at trial suggested that the burglary conviction could be recharacterized as a one-year prior prison term commitment, on appeal defendant points out, and the Attorney General properly concedes, that there is no evidence that defendant served a prison term for this Kings County offense separate from the prison term served for his San Benito County offenses. By the terms of section 667.5, subdivision (g), one continuous completed period of incarceration amounts to one separate prison term, whether "imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes." (*People v. Jones* (1998) 63 Cal.App.4th 744, 747 [74 Cal.Rptr.2d 328], and cases there cited.)

### 6. THE VIOLENT FELONY CREDIT LIMITATION IS INAPPLICABLE

The trial court, relying on the probation department's calculation, awarded defendant 44 days of conduct credit for his 296 actual days of presentence incarceration. The probation department applied the 15 percent credit limitation that applies when the new offense is a violent felony. (§ 2933.1.)

As we explained in the previous section, there was no evidence establishing that defendant's witness dissuasion qualifies as a violent felony. On appeal defendant points out, and the Attorney General properly concedes, that defendant is entitled to the conduct credit ordinarily authorized under section 4019, which is a total of two days of conduct credit for every four-day period of presentence incarceration. (E.g., *People v. Dieck* (2009) 46 Cal.4th 934, 939 [95 Cal.Rptr.3d 408, 209 P.3d 623]; § 4019, subd. (f).) Thus, defendant is

---

[14] In contrast, all felony violations of section 136.1 are considered serious felonies under section 1192.7, subdivision (c)(37), " 'intimidation of victims or witnesses, in violation of section 136.1.' " (*People v. Neely, supra,* 124 Cal.App.4th at p. 1267.)

entitled a total of 148 days of conduct credits in addition to his 296 days of actual credits or 444 total days of credits.

## DISPOSITION

The conviction of violating Penal Code section 136.1, subdivision (c)(1) is reversed. The case is remanded for resentencing defendant for a violation of section 136.1, subdivision (b)(1). In resentencing defendant the trial court shall determine whether the crime is a misdemeanor or a felony and shall not impose a three-year enhancement under Penal Code section 667.5, subdivision (a) or a custody credit limitation under Penal Code section 2933.1.

Rushing, P. J., concurred, and Duffy, J., concurred in the judgment only.